**SUPERIOR LAUNDRY AND TOWEL SUPPLY COMPANY, Plaintiff, v. CINCINNATI (City), HARRELL, City Manager, FARRELL, City Solicitor, Defendants.**

Common Pleas Court, Hamilton County.

No. A-172922. Decided October 28, 1959.

Nicholas Bauer, for plaintiff.
James W. Farrell, Jr., City Solicitor, for defendant.

## OPINION
By LEIS, J.:

Plaintiff, Superior Laundry and Towel Supply Co., brings this action as a taxpayer on behalf of itself and other taxpayers of the City of Cincinnati.

On October 14, 1959, a Temporary Restraining Order was granted by this Court to the plaintiff. This matter is now before the Court on the motion of the defendant, City of Cincinnati, to dissolve this Temporary Restraining Order. The basic facts are not in dispute. The Cincinnati Baseball Club Company, owner of the franchise of the Cincinnati Redlegs, indicated that it would possibly move the franchise from this City, unless satisfactory arrangements were made regarding the parking around Crosley Field. As a result of a committee study and a report submitted to the County and City, the Council of the City of Cincinnati passed an ordinance authorizing the issuance of $2,000,000 in revenue bonds in order to acquire some 2600 additional off-street parking places in the proximity of Crosley Field. It should be noted that the City Manager was authorized to enter into a contract with the Cincinnati Baseball Club Company, wherein the Cincinnati Baseball Club Company would agree to maintain its major league baseball franchise in this City, through the season of 1962, provided that the City of Cincinnati provided the off-street parking places referred to above. The City, pursuant to the contract and the ordinance, has proceeded to acquire property under the power of eminent domain, and at this time has issued the bonds and has acquired approximately one and a half million dollars worth of property for parking purposes. The property of the plain-

tiff is sought to be appropriated by the City to provide parking places where this building now stands.

The City Solicitor and Counsel for the plaintiff have advanced many arguments in support of their respective positions. After a thorough consideration of these arguments, a study of the law on this subject and the briefs submitted by counsel, the Court believes that the determination of this motion to dissolve the Temporary Restraining Order resolves itself to one simple issue: Is this a public purpose?

It is the position of the City Solicitor in support of his motion that ball games at Crosley Field are the generating cause of traffic congestion; that the traffic congestion is a problem to be solved by the City, and thus the idea of off-street parking to allow a better flow of traffic. The contention of counsel for plaintiff is that this off-street parking program as it is applied here is strictly a favor to benefit a private corporation, to-wit: the Cincinnati Baseball Club Company, and, therefore, the entire program is void and that it is not a public purpose.

What is a public purpose is, of course, a matter to be determined on the individual facts of each case guided however, by the fundamental rules laid down by the Courts. As Judge Middleton stated in **State, ex rel. Gordon, v. Rhodes, 156 Oh St 81**, at page 91, "It has been said repeatedly that what is a public municipal purpose is not susceptible of precise definition." Quoting from 37 American Jurisprudence, Judge Middleton said: "Generally, a public purpose has for its objective the promotion of the public health, safety, morals, general welfare, security, prosperity and contentment of all the inhabitants or residents within the municipal corporation, the sovereign powers of which are used to promote such public purpose * * *. The modern trend of decision is to expand and liberally construe the term 'public use' in considering state and municipal activities sought to be brought within its meaning. The test of public use is not based upon the function or capacity in which or by which the use is furnished. The right of the public to receive and enjoy the benefits of the use determines whether the use is public or private.

In the case of **State, ex rel. Bruestle v. Rich, 159 Oh St 13**, at page 27, the Supreme Court of Ohio said: "If, therefore, the primary purpose for the exercise of the power is to acquire the property for 'the public welfare' within the meaning of **Section 19, Article I, Ohio Constitution**, the power may be exercised even where there may be an incidental nonpublic use of the property or benefit from its taking."

This Court feels that when the City Council of the City of Cincinnati by legislative enactment declares that this program is in the public purpose this Court must at least give prima facie acceptance of that correctness. See paragraph 2 of the syllabus of the State, ex rel. Gordon, v. Rhodes, supra, which reads as follows:

"The determination of what constitutes a public municipal purpose is primarily a function of the legislative body of the municipality, subject to review by the courts, and such determination by the legislative body will not be overruled by the Courts except in instances where that determination is manifestly arbitrary or unreasonable."

The Court believes that the action taken by the City of Cincinnati is a valid exercise of the right of eminant domain and is within the

public purpose; therefore, the City's motion to dissolve this Temporary Restraining Order is well taken and the Court grants same.

Please present your entry accordingly.